Appeal No. 19-1301, 19-1490

# *United States Court of Appeals*
*for the*
# *Federal Circuit*

EMERSON ELECTRIC CO.,

*Appellant*,

– v. –

SIPCO, LLC,

*Cross-Appellant*.

APPEAL FROM THE UNITED STATES PATENT AND TRADEMARK OFFICE, PATENT TRIAL AND APPEAL BOARD, IN CASE NO. IPR2017-00359

## REPLY BRIEF OF CROSS-APPELLANT SIPCO, LLC

DR. GREGORY GONSALVES
GONSALVES LAW FIRM
2216 Beacon Lane
Falls Church, Virginia 22043
571.419.7252
gonsalves@gonsalveslawfirm.com

*Counsel for Cross-Appellant*
*SIPCO, LLC*

## CERTIFICATE OF INTEREST

Pursuant to Federal Circuit Rule 47.4, counsel for Cross-Appellant SIPCO, LLC, certifies as follows:

1. The full name of every party represented by me is:

**SIPCO, LLC**

2. The name of the real party in interest represented by me is:

**Not applicable**

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party represented by me are:

Glocom, Inc.

4. The names of all law firms and the partners or associates that appeared for the party now represented by me in the trial court or agency or are expected to appear in this court are:

**Gonsalves Law Firm:**

Gregory J. Gonsalves

**Meagher Emanuel Laks Goldberg & Liao, LLP:**

Thomas F. Meagher

5. The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal are:

*SIPCO, LLC, et al. v. Emerson Electric Co., et al.*, Civil Action No. 6:15-cv-00907-JRG-KNM (E.D. Texas), which has been transferred to the Northern District of Georgia, Case No. 1:16cv2690.

Respectfully submitted,

/s/ Gregory J. Gonsalves
GREGORY J. GONSALVES
GONSALVES LAW FIRM
2216 Beacon Lane
Falls Church, VA 22043
571.419.7252
gonsalves@gonsalveslawfirm.com

*Counsel for Cross-Appellant*
*SIPCO, LLC*

# TABLE OF CONTENTS


CERTIFICATE OF INTEREST ........ ii

TABLE OF CONTENTS ........ iv

TABLE OF AUTHORITIES ........ vi

TABLE OF ABBREVIATIONS ........ vii

ARGUMENT ........ 1

I. EMERSON AND THE BOARD ERRED IN THEIR CONSTRUCTION OF "LOW-POWER RADIO FREQUENCY (RF) TRANSCEIVER" ........ 3

A. THE BOARD'S FINDINGS ON THE PRIORITY AND EXPIRATION DATES OF THE '692 PATENT ARE CLEARLY ERRONEOUS AND LED IT TO APPLY THE WRONG CLAIM CONSTRUCTION STANDARD ........ 3

B. THE CONSTRUCTION SET FORTH BY EMERSON AND THE BOARD IS INCONSISTENT WITH THIS COURT'S CONSTRUCTION OF THE SAME TERM IN A PRIOR PROCEEDING ........ 6

C. EMERSON AND THE BOARD DID NOT PROPERLY CONSIDER THE SPECIFICATION IN THEIR CLAIM CONSTRUCTION. ........ 8

D. EMERSON FAILS TO PROVIDE ANY EXPERT TESTIMONY TO SUPPORT THE BOARD'S CONSTRUCTION ........ 10

II. NEITHER THE BOARD NOR EMERSON SHOW SUBSTANTIAL EVIDENCE SUPPORTING A CONCLUSION OF OBVIOUSNESS ........ 12

A. NEITHER THE BOARD NOR EMERSON SHOWED SUBSTANTIAL EVIDENCE SUPPORTING A CONCLUSION THAT CUNNINGHAM'S DATA COLLECTION MODULE (DCM) IS A LOW-POWER TRANSCEIVER HAVING A LIMITED TRANSMISSION RANGE ........ 12

B. NEITHER THE BOARD NOR EMERSON SHOWED SUBSTANTIAL EVIDENCE SUPPORTING A CONCLUSION THAT CUNNINGHAM'S SENSOR INTERFACE

MODULE IS A LOW-POWER TRANSCEIVER HAVING A LIMITED TRANSMISSION RANGE. ....... 19

C. NEITHER THE BOARD NOR EMERSON SHOWED SUBSTANTIAL EVIDENCE SUPPORTING A CONCLUSION THAT CUNNINGHAM'S GATEWAY DELIVERS AN "ENCODED ELECTRICAL SIGNAL" TO A COMPUTER ON THE WAN. ....... 21

III. CONCLUSION. ....... 23

CERTIFICATE OF SERVICE ....... 24

CERTIFICATE OF COMPLIANCE ....... 25

# TABLE OF AUTHORITIES

## Cases

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co*,
463 U.S. 29, 43 (1983) .......................................................................6, 15, 19

*Personal Web Techs., LLC v. Apple, Inc.*,
848 F.3d 987 (Fed. Cir. 2017) ...................................................................15

*Power Integrations, Inc. v. Lee*
797 F.3d 1318 (Fed. Cir. 2005) .......................................................5, 14, 19

*Rovalma, S.A. v. Bohler-Edelstahl GmbH*
856 F.3d 1019 (Fed. Cir. 2017) .................................................................15

*Phillips v. AWH Corp.*
415 F.3d 1303 (Fed. Cir. 2005) ..................................................2, 4, 5, 6, 9

*SIPCO, LLC v. Emerson Elec. Co.*
939 F.3d 1301, 1314 (Fed. Cir. 2019) ...............................1, 2, 7, 8, 9, 11, 13

*In re Suitco Surface, Inc.*
603 F.3d 1255 (Fed. Cir. 2010). ...............................................................3, 4

## Patent Office Rules

37 C.F.R. § 42.100 .........................................................................................3

# TABLE OF ABBREVIATIONS

**Parties**

| | |
|---|---|
| Appellee, Cross-Appellant, Patent Owner, SIPCO | SIPCO, LLC |
| Appellant, Petitioner, or Emerson | Emerson Electric Co. |

**Citations**

| | |
|---|---|
| Appx____ | Joint Appendix at page(s) _____ |
| MPEP | Manual of Patent Examining Procedure |

**Terms**

| | |
|---|---|
| ’692 Patent | United States Patent No. 6,437,692 |
| ‘842 Patent | United States Patent No. 8,908,842 |
| ’842 Decision | *SIPCO, LLC v. Emerson Elec. Co.*, 939 F.3d 1301, 1314 (Fed. Cir. 2019) |
| AIA | America Invents Act |
| APA | Administrative Procedure Act |
| Cunningham | United States Patent No. 6,124,806 |
| DCM | Data Collection Module disclosed in Cunningham |
| Mason | United States Patent No. 6,100,817 B2 |
| Shuey | United States Patent No. 5,874,903 B2 |
| McGowan | John J. McGowan, *Direct Digital Control: A Guide to Distributed Building Automation*, 1995. |
| Board, PTAB | Patent Trial and Appeal Board |

| | |
|---|---|
| FWD | Final Written Decision dated November 28, 2018 |
| IPR | *Inter Partes* Review |
| POSITA | person of ordinary skill in the art |
| Blue Br. | Opening Brief of Appellant Emerson Electric Co., Filed August 9, 2019 |
| Red Br. | Principal and Opening Brief of Cross-Appellant SIPCO, LLC Filed October 18, 2019 |
| Yellow Br. | Response and Reply Brief of Appellant Filed December 30, 2019 |

## ARGUMENT

Emerson's claim construction argument for the claimed "low-power radio frequency (RF) transceiver"—like the Board's—is inconsistent with the Specification of the patent at issue here (U.S. Patent 6,437,692, "the '692 patent") as well as this Court's construction of the same claim term for a related patent (U.S. Patent 8,908,842, "the '842 patent") in a related case. *SIPCO, LLC v. Emerson Elec. Co.*, 939 F.3d 1301, 1314 (Fed. Cir. 2019) ('842 Decision). The flawed construction, in turn, caused both the Board and Emerson to err in their anticipation and obviousness analysis. At a minimum, Ground 3 of this case should be vacated and remanded to the Board to perform an invalidity analysis under the proper claim construction—as was done in the related '842 Decision.

Emerson's responsive brief, like the Board's decision below, fails to grapple with the core of SIPCO's arguments. Emerson never addresses the Board's clear error in finding that the priority date of the '692 patent is "August 2, 1999" (Appx4) when the priority date is, in fact, "June 22, 1998," as indicated on the face of the '692 patent. Appx53. Instead, Emerson blithely asserts that the Board applied the correct claim construction standard. *See* Yellow Br. 46. That is inaccurate. The Board's error on the priority date led it to err in its finding that the '692 patent had not expired by the date of its Final Written Decision (November

28, 2018, "FWD") when, in fact, it had expired several months earlier on June 22, 2018. *See* Appx53. The Board's error on the expiration date then led it to err in applying the broadest reasonable interpretation (BRI) claim construction standard when it should have applied the standard set forth in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005).

Emerson also fails to meaningfully respond to SIPCO's showing that the Board's claim construction of the "low-power radio frequency (RF) transceiver" here is inconsistent with this Court's construction of the ***same claim term*** in a patent having ***the same inventors*** and the ***same subject matter*** for the related '842 patent in the '842 Decision. There, this Court ruled that the claimed "low-power transceiver" is considered "to mean a device that transmits and receives signals at a power level corresponding to ***limited transmission range***." *SIPCO, LLC v. Emerson Elec. Co.*, 939 F.3d at 1314 (*emphasis added*). Indeed, Emerson's claim construction arguments have already been considered and rejected by this Court in the '842 Decision. *Infra*, § I.C.

Emerson fails to provide any expert testimony to support the Board's construction. The portion of its expert's declaration relating to claim construction—like most of the declaration—was copied from the Petition that was written by Emerson's attorneys and therefore, amounts to mere attorney argument that should have been given little or no weight. Tellingly, nothing in the testimony

of Emerson's expert in this case is inconsistent with the testimony of Emerson's two experts in the case corresponding to the '842 Decision.

The Board's cancellation of claims 32, 34, 36-38, 55-57, and 59 of the '692 patent (Ground 3) should be reversed because it is based on an incorrect claim construction and is not supported by substantial evidence.

# I. EMERSON AND THE BOARD ERRED IN THE CONSTRUCTION OF "LOW POWER RADIO FREQUENCY (RF) TRANSCEIVERS."

## A. THE BOARD'S FINDINGS ON THE PRIORITY AND EXPIRATION DATES OF THE '692 PATENT ARE CLEARLY ERRONEOUS AND LED IT TO APPLY THE WRONG CLAIM CONSTRUCTION STANDARD.

As explained in detail in SIPCO's opening brief, the FWD contains several indications that "the Board applied the 'broadest reasonable' [claim construction] standard." First, the Board made the erroneous finding that the priority date of the '692 patent is "August 2, 1999" (Appx4) when the priority date is, in fact, "June 22, 1998." Appx53. The Board's error on the priority date led it to err in its finding that the '692 patent had not expired by the date of its FWD when, in fact, it had expired several months earlier on June 22, 2018. *See* Appx53.

The Board quoted the rule stating that a claim in a patent "'that will not expire before a final written decision is issued shall be given the broadest reasonable construction'" (Appx10, *quoting* 37 C.F.R. § 42.100(b) (2016)), thereby indicating that it believed the '692 patent had not expired when it issued its FWD. The Board cited to *In re Suitco Surface, Inc.*, 603 F.3d 1255 (Fed. Cir. 2010)

(Appx10), a case which applied the "broadest reasonable" interpretation standard (*id.* at 1260), thereby indicating that it was applying that standard.

In response, Emerson blithely asserts that the Board applied "the standard articulated in Phillips" without addressing the points or any of the questions raised by SIPCO. Yellow Br. 46. Emerson did not even mention the Board's error in stating in the FWD that the '692 patent had not expired, the rule quoted in the FWD indicating that unexpired patents are subject to BRI, or the *In re Suitco* BRI case that was cited in the FWD, let alone explain how the FWD could possibly be interpreted as applying the *Phillips* standard despite these multiple indications in the FWD to the contrary. *See* Yellow Br. 46-47.

Instead, Emerson relies on *In re Watts*, 354 F3d 1362 (Fed. Cir. 2004) to support the position that SIPCO "waiv[ed] the arguments … concerning whether the Board applied the wrong claim construction standard." Yellow Br. 46. But *Watts* is inapposite. *Watts* stands for the unremarkable proposition that a party that does not make an argument about the scope of the claims below cannot make the argument for the first time on appeal. *Watts*, 354 F.3d at 1368. Here, SIPCO argued extensively before the Board about the scope of the claims (*e.g.*, that a "low-power transceiver" should be construed as having a limited transmission range). More importantly, *Watts* does not state that a party can waive its right to point out to an appellate court that an agency made a legal error (*e.g.*, applying the

wrong claim construction standard). Indeed, SIPCO had no way of knowing that the Board would make this error in the FWD. SIPCO does not have a psychic power to see future events (*e.g.*, the Board getting the priority date wrong) before they occur, nor does the case law require it to have such a power.

Emerson next relies on *In re CSB-System Int'l, Inc.*, 832 F.3d 1355, 1337-1338, 1341 (Fed Cir. 2016) to detract from the Board's clear error in applying the wrong claim construction standard by now alleging for the first time that the "construction is the same under both *Phillips* and BRI." Yellow Br. 46. Emerson's position is untenable. *In re CSC System* merely indicates that the claim construction of certain types of patent claims may be the same under the BRI and *Phillips* standards. *Id.* at 1337. There is not a whisper of a suggestion anywhere in the FWD that the construction of the '692 patent claims may be the same under both standards, let alone any explanation for why they would be. *See* Appx10. It is improper for this Court to accept such "post hoc rationalizations for agency action" or to "supply a reasoned justification for an agency action that ***the agency itself has not given***." *Power Integrations, Inc. v. Lee*, 797 F.3d 1318, 1326 (Fed. Cir. 2015) (emphasis added). This Court's "review of [the Board's] patentability determination is confined to the grounds upon which the Board actually relied." *Id.*, (*quoting Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)

and *citing Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co*, 463 U.S. 29, 43 (1983).

Emerson also did not provide any explanation either below or on appeal of why the constructions would be the same under both BRI and *Phillips*; it merely made one conclusory statement in a footnote that "any difference between the two should not effect the outcome of the proceeding." Appx623 n.3. That is, Emerson did not state before the Board that the construction under the two standards would have been the same, as it now alleges to this Court. Rather, it acknowledged the opposite—that there is a difference between the two standards. *Id.* Moreover, the U.S. Patent & Trademark Office (PTO) expressly acknowledges that the principles set forth in Phillips will result in narrower claim constructions: "Once the patent expires, a narrow claim construction is applied." MPEP 2666.01, citing MPEP § 2258, subsection I.G. Clearly, the Board used a broader claim construction standard than it should have used.

### B. THE CONSTRUCTION SET FORTH BY EMERSON AND THE BOARD IS INCONSISTENT WITH THIS COURT'S CONSTRUCTION OF THE SAME TERM IN A PRIOR PROCEEDING.

As explained in SIPCO's opening brief, this Court construed the ***same*** "low power transceiver" claim term in a patent having ***the same inventors*** and the ***same subject matter*** for the related '842 patent "to mean a device that transmits and receives signals at a power level corresponding to ***limited transmission range***."

*SIPCO, LLC v. Emerson Elec. Co.*, 939 F.3d at 1314 (*emphasis added*). Emerson's response that the Specifications of the two patents are not identical (*see* Yellow Br. 51) misses the point. Both specifications tie—albeit using different words—"the low power transceiver to having a limited transmission range." *SIPCO, LLC v. Emerson Elec. Co.*, 939 F.3d at 1314; *see e.g.*, Appx74, 5:48-57 ("transceivers, that are relatively small in size and transmit a relatively low power RF signal" have a "transmission range" that is "relatively limited."); *id.* ("this relatively limited transmission range of the transceivers is an advantageous and desirable characteristic of control system 200."); Appx74-75, 6:67-7:4 ("only one stand-alone transceiver will pick up a transmission from a given integrated transceiver 212, 214, 216, 222, and 224 (due in part to the low power transmission nature of each transmitter).") Clearly, the Specification of the '692 patent explicitly ties the low power transceiver to a limited transmission distance, just as the '842 patent does. This Court should therefore reverse the Board's claim construction here, just as it did in the '842 Decision.

Indeed, Emerson's claim construction arguments here have already been considered and rejected by this Court in the '842 Decision. Emerson argues that "the specification describes low power as a property that may impact transmission range, but … does not equate these properties.'" Yellow Br. 48, *quoting* Appx13. But as explained by this Court, "the line between construing terms and importing

limitations can be discerned with reasonable certainty and predictability if the court's focus remains on understanding how a person of ordinary skill in the art would understand the claim terms." *SIPCO, LLC v. Emerson Elec. Co.*, 939 F.3d at 1314. And both of Emerson's experts agreed in the previous case corresponding to the '842 Decision that a "characteristic of a low-power transmitter is a limited transmission range." *Id.*

For these reasons, this case should be remanded to the Board with instructions to apply the correct claim construction of the claimed "low power transceiver" as having a "limited transmission range." *Id.*

### C. EMERSON AND THE BOARD DID NOT PROPERLY CONSIDER THE SPECIFICATION IN THEIR CLAIM CONSTRUCTION.

As explained above and in SIPCO's opening brief, the Specification of the '692 patent repeatedly indicates that the low power transceivers have a limited transmission range. *Supra*, § II.B, Red Br. 62-66. Emerson responds by stating that SIPCO's proposed construction does not indicate "how 'limited' the range must be (*i.e.*, what the range's distance should be)" and that "a term that can be given meaning" only from the prior art is "impermissible indefinite." Yellow Br. 49-50, *quoting* Appx13-14. But that argument is wrong. Emerson did not allege that the claim term "low-power transceiver" is indefinite before the Board and therefore, has waived that argument. *Israel Bio-Eng'g Project v. Amgen*, 475 F.3d

1256, 1265 (Fed. Cir. 2007) (declining to consider arguments that were not made below). Indeed, this Court addressed this very same issue in the '842 Decision by explaining that "the parties did not allege, and the Board did not find that the meaning of 'limited transmission range,' or even 'low-power,' was uncertain." *SIPCO, LLC v. Emerson Elec. Co.*, 939 F.3d at 1314. Thus, Emerson did not raise an indefiniteness argument before the Board in either case. Clearly, that argument has been waived, just as it was in the case corresponding to the '842 Decision.

Emerson's allegation that SIPCO based its claim construction on the prior art (Yellow Br. 50) is merely an attempt to build, then knock down, a straw man argument that SIPCO never made. SIPCO did not even mention any prior art in the sections on claim construction in its briefs at this Court or the Board. Red Br. 62-66.

Emerson improperly quibbles with particular instances of the word "may" in the Specification, to argue that the claimed low power transceiver is not required to have a limited transmission range. Yellow Br. 48. That is improper because claims should be construed to be consistent with the ***entire specification***. *Phillips*, 415 F.3d at 1315. And the Specification explains that the "limited transmission range of the transceivers is an advantageous and desirable characteristic of control system 200" Appx74, 5:48-57. The Specification further explains, "only one stand-alone transceiver will pick up a transmission from a given integrated

transceiver" because of the "low power transmission nature of each transmitter." Appx74-75, 6:67-7:4. "The duplicate packets increase the data congestion in the network." (Id. at 2:56–59). As also explained in the Specification, "a great deal of 'packet duplication' or 'pollution' [is created] as copies of a particular data packed are multiply repeated." '692 patent, 2:48-51. A PHOSITA reading the claims in light of the Specification would have understood that a low power transceiver satisfies the inventor's purpose of limiting the packet duplication and pollution problem by reducing the transmission range of transceivers so that only one transceiver will pick up a packet sent by another transceiver. A PHOSITA would not have understood—as alleged by Emerson (Yellow Br. 60)—that a low power transceiver would have a transmission range long enough to reach transceivers within a 10 to 20 mile radius of a "Metropolitan Network" or "National Backbone Network."

### D. EMERSON FAILS TO PROVIDE ANY EXPERT TESTIMONY TO SUPPORT THE BOARD'S CONSTRUCTION

As explained in SIPCO's opening brief, the portion of Mr. Kinney's declaration relating to the low-power transmission—as well as the vast majority of his declaration—was copied from the Petition written by Emerson's attorneys and therefore, amounts to mere attorney argument that should have been given little or no weight by the PTAB. Red Br. 25. Emerson's only excuse for the prodigious copying is that the declaration was "created with the Petition." Yellow Br. 28.

This excuse has no merit for two reasons. First, the attorneys who are representing Emerson on appeal have no knowledge of when Emerson's Petition and declaration were written because they did not write and file them.[1] Also, there is no testimony from the attorneys who wrote the Petition or any other evidence in the record to support Emerson's excuse that the Petition and declaration were written at the same time.

Second, the issue of ***when the documents were written*** is unrelated to ***the prodigious copying of the attorney argument from the Petition into Mr. Kinney's declaration.*** Mr. Kinney could have written his own thoughts and opinions in his declaration regardless of when the declaration and Petition were done. That is, the Petition that was written by Emerson's attorneys need not have been copied into Mr. Kinney's declaration, even if the two documents had been written at the same time.

More importantly, both of Emerson's experts in the case corresponding to the '842 Decision testified that the power level of a transmitter effects its range. *SIPCO, LLC v. Emerson Elec. Co.*, 939 F.3d at 1314. And nothing in the testimony of Emerson's expert in this case is inconsistent with the testimony of Emerson's two experts in the preceding case.

Emerson also argues that the Board agreed with Emerson's expert's

[1] Emerson changed attorneys at the PTAB after the Petition was filed.

testimony that the range of a transceiver "'may depend on multiple factors beyond power.'" Yellow Br. 49. But the mere possibility that a transmission range may depend on other factors does not indicate an absence of a relation between transceiver power and transmission range (*i.e.*, low power transceivers have a limited transmission range). Indeed, Emerson's argument that the range may depend on other factors (*id.*) is a red hearing because it does not address the important point that the inventor of the '692 Patent, Mr. David Petite, chose a particular way to limit the transmission range (*i.e.*, low-power transceivers) so as to meet the purpose that "only one stand-alone transceiver will pick up a transmission from a given integrated transceiver 212, 214, 216, 222, and 224." Appx74-75, 6:67-7:4.

Thus, the expert testimony supports the construction of "low power transceiver" as having a "limited transmission range."

## II. NEITHER THE BOARD NOR EMERSON SHOW SUBSTANTIAL EVIDENCE SUPPORTING A CONCLUSION OF OBVIOUSNESS.

### A. NEITHER THE BOARD NOR EMERSON SHOWED SUBSTANTIAL EVIDENCE SUPPORTING A CONCLUSION THAT CUNNINGHAM'S DATA COLLECTION MODULE (DCM) IS A LOW-POWER TRANSCEIVER HAVING A LIMITED TRANSMISSION RANGE.

Emerson's arguments in support of the Board's unpatentability conclusions are based on an erroneous claim construction and are inconsistent with the record evidence. As explained in detail above as well as in SIPCO's opening brief and

this Court's opinion in the '842 Decision, the claim term "low power transceiver" means a transceiver having a limited transmission range. *SIPCO, LLC v. Emerson Elec. Co.*, 939 F.3d at 1314; *supra*, § I.D; Red Br. 62-66. Under the proper construction, the transmission range of a transceiver should be limited to reduce the number of transceivers that receive data from the transmitting transceiver (e.g., to one receiving transceiver), to thereby reduce the packet duplication and pollution problem. *Supra*, § I.D.

Emerson has the burden to show that Cunningham's Data Collection Modules (DCMs) are low power having a limited transmission range because it contended that they are the claimed "low power transceivers" recited in claim 55 of the '692 patent. Appx186. But as indicated in SIPCO's opening brief, "there is no mention of the ***power level*** of Cunningham's data collection modules anywhere in the Final Written Decision." Red Br. 59 (*emphasis added*).

None of the phrases from pages Appx45-46 of the FWD quoted by Emerson (Yellow Br. 56-57) even mention the power level of Cunningham's DCM, let alone explain why the power level of the DCM is low or how the transmission range of the DCMs is limited so as to reduce the number of transceivers that receive the transmitted data packets.

Rather, the FWD merely mentions "multiple data collection modules" and states that "Cunningham explicitly discloses the use of data collection modules

with signal repeating capabilities for use in remote areas." Appx45, *citing* Appx1061. The FWD also states that "[w]hen the data collection module is used in this manner it is also called a data repeater module." *Id. quoting* Appx1061. But neither of these sentences—nor any other sentence in the FWD—relate to the power level of Cunningham's DCMs or to the claimed power level limitation. They instead relate to the portion of claim 55 requiring the transmitted RF signal to be "received and repeated as required to communicate the information signal to a gateway, the gateway providing access to a WAN." The Board simply neglected to make any factual findings of the power level or transmission range of Cunningham's DCMs. *See* Appx45. For this reason alone, the Board's decision should be reversed and remanded to determine, at a minimum, whether Cunningham's DCMs meet the "low power transceiver" limitation (as properly construed) of claim 55.

Emerson attempts to compensate for the Board's failure to make any findings regarding the power level of Cunningham's DCMs by introducing *post hoc rationalizations* about FIGs. 19 and 30. Yellow Br. 52-61. But this Court's review of [the Board's] patentability determination is confined to the grounds upon which the Board actually relied." *Power Integrations, Inc. v. Lee*, 797 F.3d at 1326. This Court cannot "'accept appellate counsel's post hoc rationalizations for agency action'" or "supply a reasoned justification for agency action that the

agency itself has not given." *Id. at* 1326 (*quoting Burlington Truck Lines*, 371 U.S. at 168 and *citing State Farm*, 463 U.S. at 43). Emerson's reliance on FIGs. 19 and 30 of Cunningham are examples of prohibited *post hoc rationalizations* because the Board made no mention of either figure anywhere in its FWD. *See* Appx1-52.

This Court reverses or vacates Board decisions that ignore, assume away, or insufficiently explain important aspects of the obviousness analysis. *See e.g., Personal Web Techs. V. Apple, Inc.*, 848 F.3d 987, 992 (Fed. Cir. 2017) ("We have repeatedly applied those requirements in reviewing the adequacy of the Board's obviousness analysis … Our review of the Board is rooted not just in the law of obviousness but in basic principles of administrative law."); *Cutsforth, Inc. v. MotivePower, Inc.*, 636 F. App'x 575, 577-78 (Fed. Cir. 2016)(nonprecedential); *Rovalma, S.A. v. Bohler-Edelstahl GmbH,* 856 F.3d 1019, 1026 (Fed. Cir. 2017); *In re NuVasive, Inc.*, 842 F.3d 1376, 1382 (Fed. Cir. 2016).

Even if this Court were to disregard its precedent and consider FIGs. 19 and 30, the Board's decision would still not be supported by substantial evidence. Figure 19 is not even directed to a DCM, and therefore, cannot possibly show that the DCM transceivers meet the low-power limitations of claim 55. In addition, the DCM of Figure 30 does not satisfy the low-power requirements of claim 55. Claim 55 recites, inter alia, "placing a plurality of relatively low-power radiofrequency (RF) transceivers dispersed geographically wherein the low-power

RF signal is received and repeated as required to communicate the information signal to a gateway, the gateway providing access to a WAN." Appx83. That is, claim 55 requires RF transceivers to repeat and communicate low-power signals to other repeaters and a gateway. The transceiver in Cunningham's DCM that communicates with repeaters and the gateway is shown in the top of FIG. 30 (port 2314), not the bottom portion that is relied upon by Emerson. The port at the bottom part of FIG. 30 does not communicate with repeaters or a gateway and therefore, is irrelevant to claim 55. Appx1025. Neither FIG. 30 nor the associated text in Cunningham discloses that the transceiver that communicates with repeaters and the gateway (via the top port of FIG. 30) is low power. *Id.* The Board's unpatentability conclusions with respect to claim 55 are not supported by substantial evidence.

Emerson advances another misplaced argument to deflect from the prior art's shortcomings. Emerson attempts to build, then knock down, a straw man argument that SIPCO never made. According to Emerson, SIPCO's attention to how Cunningham's transceivers transmit at a higher power and longer ranges over an outdoor Metropolitan network means that SIPCO "assumes that each DCM has a range spanning the length of the network as a whole." Yellow Br. 60. But that is plainly not so. Neither SIPCO nor its expert, Dr. Almeroth made any such assumption. Rather, Dr. Almeroth, an IEEE fellow who has received several best

paper awards (Appx3255-3256), has published hundreds of articles (Appx3233-3247), and has supervised dozens of doctoral dissertations and Master's Theses (Appx3230-3231) explained that each of Cunningham's repeaters would need to transmit at higher power at longer transmission ranges to reach other repeaters that are spaced far apart in an outdoor, metropolitan network. Appx3220-3225.

Tellingly, Emerson did not cite to any documents in evidence of any outdoor, metropolitan network having repeaters that are spaced within a short transmission range (*e.g.*, several feet) of each other. See Yellow Br. 56-62. Nor has Emerson's expert Mr. Kinney opined that the repeaters in an outdoor metropolitan network are spaced close to each other. Rather, Mr. Kinney testified that "metropolitan network span 10, 20 miles." Appx3337, 70:16-19. Once again, Emerson's position is based only on mere attorney argument. Indeed, there is no evidence in the record of any network that transmits data across a 10, 20 mile distance via a series of hundreds of low-power transceivers, each having a transmission range of several feet. Instead, a PHOSITA reading Cunningham, would agree with Dr. Almeroth that the repeaters in Cunningham's outdoor network would be spaced much further apart, and therefore, would need to transmit

at higher powers and longer ranges in order to reach other repeaters. Appx3220-3225.

Emerson also asserts that SIPCO "argues incorrectly that all 900MHz signals are high-powered based on a Radio Vision article" and that "the FCC bulletin shows that 900 MHz transceivers using less than 1 Watt are low-powered transistors." Yellow Br. 61. These assertions, however, are mischaracterizations of SIPCO's argument, the Radio Vision article, and the FCC bulletin. SIPCO instead explained—with support from its expert Dr. Almeroth and the Radio Vision article—that a PHOSITA would have understood that higher frequency transmitters require a higher power. *See* Red Br. 57. Also, the FCC bulletin does not state, contrary to Emerson's contention, that 900MHZ transceivers using less than 1W are low-powered. Rather, the FCC bulletin states that low-power transmitters "use very little power, most of them ***less than a milliwatt***." Appx2486 (*emphasis added*). A PHOSITA would have understood, therefore, that a low-power transmitter is one that uses less than a milliwatt. There is no evidence that Cunningham's DCMs use anywhere near that power level. The Board made no findings about the power level or transmission range of a DCM. *See* Appx45-46.

For all these reasons, Cunningham's DCMs are not low power; they do not have the limited transmission range required by the claimed "low power transceivers."

### B. NEITHER THE BOARD NOR EMERSON SHOWED SUBSTANTIAL EVIDENCE SUPPORTING A CONCLUSION THAT CUNNINGHAM'S SENSOR INTERFACE MODULE IS A LOW-POWER TRANSCEIVER HAVING A LIMITED TRANSMISSION RANGE.

SIPCO demonstrated in its opening brief that Cunningham's SIMs do not qualify as the claimed low-power transceiver under the proper construction of having a limited transmission range (*e.g.*, several feet). In response, Emerson again relies upon FIG. 19 of Cunningham. Yellow Br. 55. But its reliance on that figure is misplaced. First, the Board did not mention FIG. 19 in the FWD, let alone explain how that figure would support a finding that Cunningham's SIMs are low-powered. *See* Appx1-52. And this Court cannot "'accept appellate counsel's post hoc rationalizations for agency action'" or "supply a reasoned justification for agency action that the agency itself has not given." *Power Integrations, Inc. v. Lee*, 797 at 1326 (*quoting Burlington Truck Lines*, 371 U.S. at 168 and *citing State Farm*, 463 U.S. at 43.

Moreover, Emerson did not demonstrate that the use of the term "short-range" in Cunningham's FIG. 19 satisfies the limited range requirement of several feet that is required under the proper claim construction. As explained above, the transmission range of the claimed "low-power transceiver" is limited so as to achieve the inventor's purpose of reducing the number of transceivers that receive the transmitted packet, to thereby, prevent the problems of packet duplication, network congestion, etc. *Supra*, § I. Cunningham's SIMs have a range of over 600

feet and up to 3 miles. Appx1053, 17:60-67. That is, any transceiver within this long range will receive the packets sent by a SIM. Therefore, Cunningham's SIMs would not satisfy the inventor's purpose of reducing the number of receivers that receive transmitted packets.

Emerson failed to provide any meaningful response to the FCC's statement that "most people are within a few meters of consumer products that use low-power, non-licensed transmitter." Appx2791. A POSITA would have understood that the person using the wireless devices mentioned by the FCC would be at the same location as either the transmitter or the receiver. For example, a person using a keyless automobile entry system, a garage door opener or a cordless phone would be holding the transmitter. Thus, the distance between the transmitter and the receiver is, in fact, equal to the distance between the person holding the transmitter and the receiver. In other words, both the low power transceiver and the person holding it would be only a few meters from the receiver. The FCC passage therefore indicates that low-power transmitters have a limited transmission range of a few meters. The range of Emerson's SIMs of 600 feet to a mile (Appx1053: 17:60-67) is far in excess of the limited range (*e.g.*, a few meters) of the claimed "low-power transceivers."

### C. NEITHER THE BOARD NOR EMERSON SHOWED SUBSTANTIAL EVIDENCE SUPPORTING A CONCLUSION THAT CUNNINGHAM'S GATEWAY DELIVERS AN "ENCODED ELECTRICAL SIGNAL" TO A COMPUTER ON THE WAN.

SIPCO explained in its opening brief that claim 32 requires the gateway to deliver an electrical signal that is encoded by a wireless transmitter as well as transmitter identification information. Red Br. 67. SIPCO's expert explained that Cunningham would not have taught this claim requirement because its "data collection module does not perform any express translation/protocol conversion of a signal that it receives from a sensor interface module into TCP/IP format." Appx3211, ¶ 118.

In response, Emerson repeats the Board's allegation that "SIPCO's position 'is premised on reading a limitation into the claims, namely that the information encoded in the RF signal must be translated in real time.'" Yellow Br. 62, *quoting* Appx37. But this is nothing but a straw man argument—which SIPCO never made—that the Board built itself and then proceeded to knock down. SIPCO agrees with and endorses this Court's case law prohibiting the incorporation of limitations into the claim. It is simply not relevant here. SIPCO does not make the argument that the information encoded must be translated in real time or that a real time limitation should be incorporated into the claims.

SIPCO instead argues based on the claim language itself that the electrical signal delivered by the gateway must have been encoded by a wireless transmitter.

*See* Red Br. 66-69. That is, SIPCO's argument is premised on ***what*** does the encoding, ***not when or how*** (*e.g.*, real time) the encoding is done. "None of the signals received from sensor interface module by a data collection module is directly forwarded/routed in whole, crossing a network boundary from the sensor interface module format to the host module format." Appx3211, ¶ 118.

For example, there is no teaching in Cunningham that any checksum value generated by a sensor identification module (SIM), which was alleged to perform the claimed "encoding" limitation in Emerson's Petition (Appx179), is delivered by Cunningham's DCM, which was alleged to be the claimed "gateway." Appx177-179. Emerson responds that the checksum is not relevant because it is not mentioned in the Board's FWD, but fails to identify in the FWD any other encoding that is allegedly generated by a SIM to form an encoded electrical signal, which is then delivered by a DCM. *See* Yellow Br. 64. Emerson and the Board mention an alleged cumulative reading but fail to explain how such a reading is encoded at a SIM to form an encoded signal which is delivered along with a transmitter identification information by the DCM. *See id.* Emerson also argues that the Board's decision on claim 1 is "irrelevant to claim 32" (Yellow Br. 66) but fails to address the fact that the same limitations that appear in both claims were found by the Board to be absent from Cunningham (*e.g.*, a gateway that delivers an

electrical signal encoded by a wireless transmitter and transmitter identification information).

The Board's decision on claim 32 is not supported by substantial evidence.

## III. CONCLUSION.

For the foregoing reasons, SIPCO respectfully asks the Court to reverse or, at a minimum, vacate and remand the Board's decision finding the Ground 3 claims unpatentable.

Respectfully submitted,

/s/ Gregory J. Gonsalves
GREGORY J. GONSALVES

DR. GREGORY J. GONSALVES
GONSALVES LAW FIRM
2216 Beacon Lane
Falls Church, VA 22043
571.419.7252
gonsalves@gonsalveslawfirm.com

*Counsel for Cross-Appellant*
*SIPCO, LLC*
February 20, 2020

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of February, 2020, I electronically filed the foregoing document with the Clerk of the United States Court of Appeals for the Federal Circuit using the CM/ECF System, which will send notice of such filing to all registered CM/ECF users.

Dated: February 20, 2020.

/s/ Gregory J. Gonsalves
Dr. Gregory J. Gonsalves

**Law Firm:** The Gonsalves Law Firm
**Address:** 2216 Beacon Lane
**City, State, ZIP:** Falls Church, VA 22043
**Telephone:** 571.419.7252
**E-mail Address:** gonsalves@gonsalveslawfirm.com

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) or Federal Rule of Appellate Procedure 28.1(e).

 X The brief contains **5,294** words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii), or

 ☐ The brief uses a monospaced typeface and contains **N/A** lines of text, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) or Federal Rule of Appellate Procedure 28.1(e) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

 ☐ The brief has been prepared in a proportionally spaced typeface using **Microsoft® Word for Windows** in **14-point Times New Roman**, or

 ☐ The brief has been prepared in a monospaced typeface using **N/A** with **N/A**.

/s/ Gregory J. Gonsalves
DR. GREGORY J. GONSALVES

*Counsel for Appellant*
*SIPCO, LLC*

February 20, 2020